

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG - 3 2005

**CLERK, U.S. DISTRICT COURT**
By _____
Deputy

| | | |
|---|---|---|
| JEFFREY J. GOLDSMITH,<br>Petitioner, | §<br>§<br>§ | |
| *v.* | §<br>§ | Civil Action No. 2:05-CV-0081 |
| DOUGLAS DRETKE, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>Respondent. | §<br>§<br>§<br>§ | |

## RESPONDENT DRETKE'S ANSWER
## WITH BRIEF IN SUPPORT

TO THE HONORABLE JUDGE OF SAID COURT:

Petitioner Jeffery J. Goldsmith ("Goldsmith"), was convicted of murder and sentenced to life.

He now challenges this conviction, alleging that trial counsel was ineffective, his guilty plea was

involuntary, and he is actually innocent. Fed. writ pet. at 7. However, his claims are unexhausted

and procedurally barred, and all fail on their merits. His petition should be denied with prejudice.

### JURISDICTION

Goldsmith challenges his conviction by means of a federal petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254, which provides the Court with jurisdiction over the subject matter and

the parties. Goldsmith was convicted in Gray County which lies in the Northern District of Texas,

Amarillo Division. *See Wadsworth v. Johnson*, 235 F.3d 959, 961-962 (5th Cir. 2000) (jurisdiction

is proper where the inmate is confined or where the conviction was obtained.) The Director denies

every allegation of fact made by Petitioner, hereinafter "Goldsmith," except those supported by the

record and those specifically admitted herein.

1

## STATEMENT OF THE CASE

### A. Proceedings Below

The Director has lawful custody of Goldsmith pursuant to a judgment and sentence of the 223rd District Court of Gray County, Texas, in cause number 6569, styled *The State of Texas v. Jeffery J. Goldsmith. Ex parte Goldsmith*, Application No. 60,429-01 at 82.[1]  Goldsmith was charged by indictment with capital murder on August 7, 2003. *Id.* at 80.  On March 24, 2004, Goldsmith pled guilty to murder, a lesser-included offense. *Id.* at 82-83.  The judge assessed his punishment at confinement for life in the TDCJ-CID. *Id.* at 82.

No appeal was filed in this case. Fed. writ pet. at 3; *Ex parte Goldsmith* at 2.  Goldsmith filed a state writ of habeas corpus challenging this conviction on September 7, 2004. *Ex parte Goldsmith* at 1.  The Texas Court of Criminal Appeals denied it without written order on November 10, 2004. *Id.* at cover.  This federal petition was filed, for purposes of the federal habeas corpus statute of limitations, on March 10, 2005.[2]  Fed. writ pet. at 9.

### B. Statement of Facts

On or about May 28, 2003, Jeffrey Goldsmith learned from his fifth wife, Ethel, that she had had an extramarital affair. *Ex parte Goldsmith* at 28.  After several hours of argument, he beat her with a baseball bat for fifteen to thirty minutes, breaking her neck and skull, and stabbed her 6 times in the head and neck. *Id.* at 28, 56-58.  He removed her clothes, "helped her to shower," and changed and fed their baby. *Id.* at 28.  Then he wrapped Ethel's body in a comforter and brought it to his stepfather's hunting land, covered it with tumbleweeds, and left. *Id.*  Goldsmith later gave a videotaped confession to a Texas Ranger. *Id.* at 21.

---

[1] Hereinafter referred to as *Ex parte Goldsmith.*

[2] *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) ("we hold that a pro se prisoner's habeas petition is filed, for purposes of determining the applicability of the AEDPA, when he delivers the papers to prison authorities for mailing."). The Director will assume *arguendo* that Goldsmith placed his petition in the prison mail system on the date that he states that he did so, March 10, 2005.

2

## STATE COURT RECORDS

A copy of Goldsmith' state habeas application, *Ex parte Goldsmith,* is being forwarded to the Court by separate cover letter.

## PETITIONER'S ALLEGATIONS

The Director understands Goldsmith to allege the following:

1. Goldsmith's attorney told him to plead guilty or face the death penalty;

2. His attorney coerced his guilty plea;

3. His attorney was ineffective for failing to investigate the case and for not presenting an insanity defense; and

4. Goldsmith is actually innocent of first degree murder and is only guilty of second degree murder, and his attorney was ineffective for giving him erroneous advice.

Fed. writ pet. at 7-8.

## EXHAUSTION OF STATE COURT REMEDIES

Goldsmith's claims are unexhausted and procedurally barred and should be dismissed with prejudice.

Under 28 U.S.C. §2254(b)(1)(A)(West 2004), a state prisoner's application for a federal writ of habeas corpus shall not be granted unless the applicant has exhausted his state court remedies. In order to satisfy the exhaustion requirement, a claim must be presented to the highest court of the state for review. *Deters v. Collins,* 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier,* 762 F.2d 429, 431 (5th Cir. 1985). For purposes of exhaustion, the Texas Court of Criminal Appeals is the highest court in the state which has jurisdiction to review a petitioner's conviction. TEX. CODE CRIM. PROC. ANN. art. 44.45 (Vernon 2004); *Richardson,* 762 F.2d at 431. To proceed before that court, a petitioner must either file a petition for discretionary review, TEX. R. APP. P. 68.1 (West 2004), or an application for a post-conviction writ of habeas corpus. TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2004).

Goldsmith is required to provide the Texas Court of Criminal Appeals with a fair opportunity to review the claim. *Picard v. Connor*, 404 U.S. 270, 275 (1971). "[T]hat means that the habeas corpus applicant must 'present his claims before the [state] courts in a procedurally proper manner according to the rules of the state courts.'" *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). All of the grounds raised in a federal application for writ of habeas corpus must have been fairly presented to the state courts prior to being presented to the federal courts. The exhaustion of state remedies doctrine codified in 28 U.S.C. §2254(b) reflects a policy that has been consistently adhered to by the Supreme Court of the United States and the United States Court of Appeals for the Fifth Circuit. *Picard* at 275; *Deters* at 793. This court is precluded from reviewing any claims which have not been exhausted. 28 U.S.C. § 2254(b)(1)(A); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 (5th Cir. 1981).

However, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). Goldsmith did not allege any violation of federal constitutional rights in his state writ, thereby neglecting to afford the Court of Criminal Appeals the opportunity to address the federal aspect of his allegations and procedurally defaulting these unexhausted issues. Goldsmith cited no case law or precedent, either state or federal, in his state writ to support his conclusions. *Ex parte Goldsmith* at 1-8. Goldsmith did not allege any constitutional violations and made no argument alerting the Court of Criminal Appeals to the federal element of his claims. *Id.*

For a claim to be exhausted, the state court system must have been apprised of the same facts and legal theory upon which the petitioner bases his assertions. A state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition, brief or similar document that does not alert it to the presence of a federal claim in order to find material, such as other opinions cited in the case, that do. In *Baldwin v. Reese*, the Supreme Court rejected the argument that Reese's state petition for discretionary review ("PDR") 'fairly presented' a federal ineffective

4

assistance of counsel claim where the PDR did not refer to a federal claim nor did it refer to the federal Constitution. 541 U.S. 27, 28-35 (2004). The Supreme Court held that even if the state standard is identical to the federal standard of review it must be labeled as a federal issue to be fairly presented. *Id.* State habeas petitioners must articulate the federal basis for their claims in state court if they wish to keep open the possibility of federal habeas review, should the state court fail to grant their relief. *Duncan v. Henry*, 514 U.S. 364, 365-66 (1995); *Anderson*, 459 U.S. at 6. In *Duncan*, petitioner Henry's state writ cited state law and argued violations of the state constitution, neglecting to articulate a federal violation until the federal habeas writ was filed. The Supreme Court denied Henry's federal writ for failure to exhaust. *Duncan* at 365.

Even though Goldsmith has not properly raised his claims before the Texas Court of Criminal Appeals, which renders them unexhausted, it would be futile to return to the state courts to file yet another state writ. If he were to present them to the state courts in a second state writ he would be cited for abuse of the writ. *See* TEX. CODE CRIM. PROC. art. 11.07 §4 (West 2004). Under *Vega v. Johnson*, 149 F.3d 354, 362 (5th Cir. 1998), *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir. 1998) and *Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997), the Fifth Circuit held that defaulted claims, yet to be presented to the State courts, were unexhausted and procedurally defaulted, concluding that the respective petitioners could not satisfy the standard for avoiding a state citation for abuse of the state writ. Goldsmith has procedurally defaulted his claims.

Although federal habeas corpus review is available when state remedies either are unavailable or wholly inappropriate to the relief sought, Goldsmith's failure to properly exhaust his state remedies is due to neither "an absence of a state corrective process," nor to circumstances rendering that process "ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(i) and (ii) (West 2004). Moreover, exceptions to the exhaustion requirement for federal habeas corpus review apply only in extraordinary circumstances and Goldsmith bears the burden of showing the futility of state review. *State v. Fuller*, 11 F.3d 61, 62 (5th Cir. 1994); *c.f. Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000) (holding that to overcome the procedural bar, a petitioner must demonstrate

5

adequate cause for the default and actual prejudice resulting from such default).

Goldsmith has failed to establish extraordinary circumstances, futility of the state process, or actual prejudice. Additionally, Goldsmith has not shown that he is actually innocent of the offense committed. Accordingly, this Court should find his claims barred under the federal procedural default doctrine.

## ANSWER WITH BRIEF IN SUPPORT

### STANDARD OF REVIEW

Goldsmith's petition is governed by the heightened standard of review provided by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because the application was filed after the act was passed. *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). Section 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d)(West 2004).

These provisions of § 2254 set forth a "highly deferential standard for evaluating state-court rulings . . . demand[ing] that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted). *See Price v. Vincent*, 538 U.S. 634, 639 (2003); *see also Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *See Martin v. Cain*, 246 F.3d

6

471, 475 (5th Cir. 2001). Under this standard, a federal habeas corpus court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers.").

A decision is contrary to clearly established federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Reversal is not required unless the state court decision "is so patently incorrect as to be 'unreasonable.'" *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001); *see Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) (the standard for federal habeas relief is one of objective reasonableness); *see also Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*) (holding that a federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence").

Furthermore, when a federal court reviews a state prisoner's habeas petition, a "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by clear and convincing evidence." § 2254(e)(1);

*Jackson v. Johnson,* 150 F.3d 520, 524 (5th Cir. 1998). This presumption of correctness is especially strong where, as here, the state habeas court and the trial court are one and the same. *See Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir. 2000). The presumption of correctness applies both to explicit and implicit findings. *Cantu v. Collins,* 967 F.2d 1006, 1015 (5th Cir. 1992); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001) (presumption of correctness applies to both explicit and implicit findings necessary to support a state court's conclusions of mixed law and fact). Moreover, where the petitioner

> "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> (A) the claim relies on
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

28 U.S.C. § 2254(e)(2)(West 2004); *Murphy v. Johnson,* 205 F.3d 809, 815 (5th Cir. 2000).

Thus, in the state courts a petitioner "must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met." *(Michael) Williams v. Taylor,* 529 U.S. 420, 437 (2000).

Goldsmith has failed to identify any clearly established Supreme Court precedent that supports relief on his allegations. In the arguments below the Director has set out Supreme Court precedent that precludes relief to Goldsmith; therefore, under the AEDPA, he is not entitled to

8

federal habeas corpus relief.

## ARGUMENT

**Goldsmith's trial counsel was effective and his plea was voluntary.**

Goldsmith's claims of ineffective assistance of counsel and an involuntary plea are unexhausted and procedurally defaulted, because his state writ did not articulate a federal constitutional argument. *Ex parte Goldsmith* at 6-7. His interwoven claims will be addressed together for the convenience of the Court.

Because the Texas Court of Criminal Appeals denied his state writ, rather than dismissing it, the denial constitutes an adjudication on the merits. *Ex parte Goldsmith* at cover; *Singleton v. Johnson,* 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte McCain,* 67 S.W.3d 204, 207 n.4 (Tex. Crim. App. 2002)(conclusory statements by petitioner for no basis for state writ relief). *See also Ex parte Okere,* 56 S.W.3d 856, 856-57 (Tex.App.–Fort Worth 2001)(failure to call certain witnesses claim denied as unsupported by any evidence). Therefore, this Court cannot grant habeas corpus relief unless it determines that the state court's determination was in conflict with clearly established federal law as determined by the Supreme Court or that it "was based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d).

### *Ineffective Assistance of Counsel*

The burden of proof in a habeas proceeding attacking the effectiveness of counsel is on the petitioner, who must demonstrate both ineffectiveness and resultant prejudice. *Carson v. Collins,* 993 F.2d 461, 466 (5th Cir. 1993). The familiar standard with which a claim of ineffective assistance is weighed is set forth in *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In order to establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687-88. In so doing, they must overcome a strong presumption that the conduct of his trial counsel fell within a wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 687-91; *Loyd v. Whitley,* 977 F.2d 149, 156 (5th Cir. 1992). "[A]ny deficiencies in counsel's performance must

9

be prejudicial to the defense in order to constitute ineffective assistance under the constitution." *Strickland* at 692. In order to establish that he has sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694; *Loyd* at 159. The prejudice showing is found in *Hill v. Lockhart*; a petitioner must show that but for counsel's act or omission, he/she would have pled not guilty and gone to trial. 474 U.S. 52, 57-58 (1985); *Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir.1994). This showing of prejudice must be "rather appreciable;" a mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*. *Armstead,* 37 F.3d at 206. Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Strickland* at 697; *Black v. Collins,* 962 F.2d 394, 401 (5th Cir. 1992).

Goldsmith raises three claims of ineffective assistance of counsel in his petition: counsel "led applicant to believe that he had no alternative but to plea [sic] guilty or be subject to death penalty," counsel "coersed [sic] applicant to plead guilty," and he "failed properly to investigate or present a [sic] insanity defense!" Fed. writ pet. at 7.

### *Failure to investigate and present an insanity defense*

Goldsmith asserts that one of the medications he was taking "made [him] react aggressive [sic] to the situation, my lawyer said no use & give up!" Fed. writ pet. at 7. This conclusory blurb is insufficient to make a claim of ineffective assistance of counsel. The investigation and insanity defense issues should be dismissed because a guilty plea waives all Sixth Amendment claims of ineffective assistance of counsel (except the voluntariness of the plea, addressed below). *Tollet v. Henderson,* 411 U.S. 258, 267 (1973); *Matthew v. Burdick,* 201 F.3d 353, 364 (5th Cir. 2000); *Haynes v. Butler,* 825 F.2d 921, 924 (5th Cir 1987); *Beasley v. McCotter,* 798 F.2d 116, 118 & n.1 (5th Cir.1986) (per curiam); *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983). Dr. Steven Schneider's examination indicated that Goldsmith was both competent to stand trial and was sane

10

at the time of the offense. *Ex parte Goldsmith* at 33-34. Goldsmith claims Schneider is the doctor who prescribed the medication, so Schneider would be in the best position to evaluate the effects of the medication. *Id.* at 6. The court's docket record reflects that defense counsel successfully petitioned the trial court for appointment of a mitigation specialist. *Id.* at 86. In the affidavit submitted to the state habeas court, defense counsel analyzed the situation as follows:

> "I advised [Goldsmith] that his conduct preceding and following the death of his wife would detract from a theory of sudden impulse because that conduct indicated premeditation and planning. In addition, the autopsy report and photographs depicted multiple stab wounds as well as blunt force trauma that could have been inflicted by the aluminum baseball bat the State alleged caused the injuries. I advised [Goldsmith] that the number and nature of the wounds, considered with the time period over which the assault took place, was evidence from which the jury would conclude that the killing was not an act of impulse or passion."

*Id.* at 21. Defense counsel had previously been certified by the Court of Criminal Appeals as competent to defend capital murder cases. *Id.* at 20. Given the information available to defense counsel through his extensive preparation and research with other experts, the autopsy reports, and Goldsmith's confession, it is reasonable that Comer did not raise a useless defense. *See Black v. Collins*, 962 F.2d 394 (5th Cir. 1992)(decision against offering evidence of defendant's mental defect) and *Barnard v. Collins*, 958 F.2d 634 (5th Cir. 1992)(decision against investigating origin of defendant's mental health condition). Counsel has a duty to make reasonable investigations which are assessed with a heavy measure of deference to counsel's judgments. *See Smith v. Murray*, 477 U.S. 527 (1986)(counsel surveyed extensive transcript, researched a number of claims, and decided that claim possibly presenting psychiatric defense was not worth pursuing).

In order to establish that counsel was ineffective due to a failure to investigate the case, Goldsmith must do more than merely allege unpreparedness– he must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial. *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir 1994); *Rose v. Johnson*, 141 F.Supp.2d 661, 691 (S.D. Tex. 2001). Again, save Goldsmith's

11

self-serving statements in his writ petition, there is no support anywhere in the record for his assertions; he does not even include an affidavit from the Texas Ranger who took his confession[3] or information on the side effects of the medicine.[4]  Fed. writ pet. at 7.  Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.  *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983); *Green v. McGougan*, 744 F.2d 1189, 1191 (5th Cir. 1984); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Goldsmith has not met the first prong of *Strickland*, namely deficiency; nor has even alleged prejudice.  *Strickland*, 466 U.S. at 692; *Hill*, 474 U.S. at 58.  Goldsmith has to demonstrate that there is a reasonable probability that, but for errors in counsel's performance, he would not have plead guilty and would have insisted on going to trial.  *Nelson v. Hargett*, 989 F. 2d 847, 851 (5th Cir. 1993); *United States v. Kinsey*, 917 F.2d 181, 183 (5th Cir. 1990).  He has not even argued, much less proven, prejudice.  This claim should be dismissed with prejudice.

### Neither counsel's advice nor Goldsmith's fears rendered his plea involuntary.

Goldsmith's coercion claim is unexhausted because his state writ did not articulate any federal grounds for relief.  *Ex parte Goldsmith* at 6-7.  As a result, it has been procedurally defaulted and should be dismissed with prejudice.  28 U.S.C. § 2254(b)(1)(A); *Terrebonne*, 646 F.2d at 1000; *Vega*, 149 F.3d at 362.  However, if this Court should choose to evaluate the substance of his claim, it should be dismissed with prejudice as meritless.

---

[3] In his state writ, Goldsmith alleged that the Ranger was "sure" Goldsmith didn't mean to kill her. *Ex parte Goldsmith* at 71. This claim appears nowhere in the federal petition.

[4] An attempt by Goldsmith to supply the affidavits of any uncalled witnesses in this action will result in the state filing a motion to dismiss for failure to exhaust state court remedies. The state makes this statement at this juncture to put Goldsmith on notice and to properly assert exhaustion during the district court proceedings, at the first available opportunity.

12

Because the Texas Court of Criminal Appeals denied the application, rather than dismissing it, the denial constitutes an adjudication on the merits. *Ex parte Goldsmith* at cover; *Singleton,* 178 F.3d at 384. Therefore, this Court cannot grant habeas corpus relief unless it determines that the state court's determination was in conflict with clearly established federal law as determined by the Supreme Court or that it "was based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d).

Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon them. *United States v. Diaz,* 733 F.2d 371, 373-74 (5th Cir. 1979). To prevail on this claim, Goldsmith must show such a strong degree of misunderstanding, duress, or misrepresentation by others that his plea would become a constitutionally inadequate basis for imprisonment. *Id.* (citing *Blackledge v. Allison,* 431 U.S. at 75). Before a trial court may accept a guilty plea, the court must ensure that the defendant "has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama,* 395 U.S. 238, 244 (1969). A plea is involuntary, and thus insufficient to support a conviction, if the defendant "has such an incomplete understanding of the charge that [their] plea cannot stand as an intelligent admission of guilt." *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13 (1976). If the defendant understands the maximum prison term and fine for the offense, the subsequent guilty plea is knowingly entered. *Ables v. Scott,* 73 F.3d 591, 592 n.2 (5th Cir. 1996)(per curiam).

Secondly, because the formal declarations in open court carry a strong presumption of truth, later conclusory allegations like Goldsmith's, unsupported by specifics, are subject to summary dismissal. *Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *Machibroda v. United States,* 368 U.S. 487, 495-96 (1962). Unsupported allegations of coercion are not enough to require an evidentiary hearing where the record of the plea hearing is sufficient to demonstrate that the guilty plea was voluntary. *Thomas v. Estelle,* 550 F.2d 1014, 1015-1016 (5th Cir. 1977)(record conclusively disclosed that petitioner not entitled to relief); *Rogers v. Maggio,* 714 F.2d 35, 39 (5th Cir. 1983)(A

13

defendant who at a plea hearing answered 'no sir' to question whether he had been threatened, coerced, or promised anything for pleading guilty was bound by such answer in his claim for federal habeas relief and was not entitled to evidentiary hearing on issue of whether he was coerced into pleading guilty).

Here, the record reflects that the state made a plea offer of life on first degree murder on August 21, 2003, which was promptly communicated to Goldsmith. *Ex parte Goldsmith* at 44-45. Harold Comer, Goldsmith's lawyer, discussed the specific facts of the offense in the context of the risks of going to a jury versus accepting the state's plea offer. *Id.* at 21. Comer advised Goldsmith of the possible penalty range for the various offenses and discussed the pros and cons of the plea options numerous times during the months between Goldsmith's arrest in May 2003 and Goldsmith's decision to plead guilty, made in March 2004. *Id.* at 20-21. .

Goldsmith was examined by Dr. Schneider in September 2003 who found that Goldsmith was mentally competent, not insane at the time of the offense, and capable of both knowing right from wrong and behaving accordingly. *Id.* at 33-34. During his stay in jail, Goldsmith became a born-again Christian and decided to accept punishment for killing his wife. *Id.* at 21. As a result, he wrote a letter to the victim's family and the community, taking responsibility for murdering her. *Id.* at 66-67. Goldsmith waived his right to a jury trial, persisted in pleading guilty, and was found by the trial court to be mentally competent. *Ex parte Goldsmith* at 83. After Goldsmith was admonished by the judge regarding the range of punishment and the consequences of his plea, the judge found his plea to be uninfluenced by fear or persuasion and accepted his plea as proof of his guilt, as well as making an affirmative deadly weapon finding. *Id.* These findings of fact were confirmed by the habeas court when it found nothing to support Goldsmith's allegations of coercion and implicitly found Goldsmith's affidavit to lack credibility. *Id.* at 77.

14

Before accepting a guilty plea, the trial judge must be convinced that the defendant's decision was voluntary in the sense that it was made knowingly, intelligently, and not as a result of coercion by the State or anyone else. *Boykin*, 395 U.S. at 242. Essentially, this is a credibility determination made by the trial court, after reviewing the evidence, the defendant's demeanor, and the circumstances surrounding the plea. This credibility evaluation is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). This presumption of correctness is especially strong where, as here, the state habeas court and the trial court are one and the same. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The presumption of correctness applies both to explicit and implicit findings. *Cantu v. Collins*, 967 F.2d 1006, 1015 (5th Cir. 1992); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (presumption of correctness applies to both explicit and implicit findings necessary to support a state court's conclusions of mixed law and fact). The Supreme Court has held many times that a federal court is not free to substitute its own judgment as to the credibility of witnesses for that of the state court fact finder. *Maggio v. Fulford*, 462 U.S. 111, 113 (1983). Further, in *Marshall v. Lonberger*, the Supreme Court held that the credibility choices made by the state trial courts may not be redetermined by the reviewing federal court when that court has not viewed the witnesses' testimony:

> As was aptly stated by the New York Court of Appeals, although in a case of a rather different substantive nature: Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth. . . . How can we say the judge is wrong? We never saw the witnesses . . . . To the sophistication and sagacity of the trial judge the law confides the duty of appraisal. *Boyd v. Boyd*, 252 N.Y. 422, 429, 169 N.E. 632, 634. *Id.*, at 339, 72 S.Ct., at 698.

459 U.S. 422, 435 (1983) (quoting *United States v. Oregon Medical Society*, 343 U.S. 326 (1952)). The record supports the trial court's findings that Goldsmith was pleading guilty freely and voluntarily, was mentally competent, and was aware of the consequences of his plea. *Ex parte*

*Goldsmith* at 15, 17, 23. Goldsmith has offered nothing more than self-serving allegations that his plea was involuntary, which are insufficient to rebut the presumption of regularity of the state court records. *Babb v. Burdick*, 61 F. Supp.2d 604, 606 (S.D. Tex. 1999); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir 1994).

Goldsmith seems to base his coercion claim on counsel's warning that if he lost at trial, he would likely get more than the sentence offered by the State as a plea bargain. Fed. writ pet. at 7. Counsel advised Goldsmith that evidence of guilt of first degree murder was compelling, and that the facts made a 'sudden passion' defense fairly incredible. *Ex parte Goldsmith* at 21. The state filed notice that it did not intend to pursue the death penalty on September 17, 2003. *Id.* at 42. Thus, the real issue was whether Goldsmith would serve forty years before parole eligibility (capital murder, sentenced to life) or thirty years before parole eligibility (first degree murder conviction with life). There was no discussion or threat of the death penalty. *Id.* at 22. Goldsmith presents no evidence or affidavits to support his version of his attorney's comments, other than his own self-serving affidavit which was considered by the state habeas court in reaching its decision. *Id.* at 72. Such conclusory statements are not evidence. *Ross*, 694 F.2d at 1011; *Green*, 744 F.2d at 1191; *Koch*, 907 F.2d at 530.

But assuming *arguendo* Goldsmith has accurately reported the comments about the death penalty, they are still insufficient to support his coercion claim. Goldsmith's argument is not that his attorney misrepresented the state's plea offer, but that he told Goldsmith he risked the death penalty if the state "brought the death penalty back" [to the negotiating table]. Fed. writ pet. at 7. This is nothing more than a truth which Goldsmith found distasteful; a truth the attorney was ethically obligated to share with Goldsmith. Defense counsel's advice to accept a plea bargain does not render a guilty plea involuntary, even if it is coupled with a threat to withdraw if the defendant refuses the plea (a factor not present in this case.) *Uresti v. Lynaugh*, 821 F.2d 1099, 1102 (5th Cir. 1987). Even where there is a bona fide defense, counsel may still advise his client to plead guilty

16

if that advice falls within the range of reasonable competence under the circumstances. *United States v. Cronic*, 466 U.S. 648, 657 (1984); *Uresti*, 921 F.2d at 1102. In such a heinous and violent crime as this, the advice was professional and reasonable. Nor does Goldsmith's desire to limit the possible penalty make a guilty plea involuntary. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

Goldsmith provided no evidence on either cause or prejudice, to the state court or to this Court, and thus has not overcome the presumption of correctness of the trial court's implicit findings of fact with any evidence at all, much less clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The state court's conclusion was not contrary to federal law and was not based on an unreasonable determination of the facts in light of the evidence. *Id.* § 2254(d). Thus, he has failed to overcome the presumption that his plea was voluntary, and this claim should be dismissed with prejudice.

***Goldsmith's actual innocence claim is unbelievable and, in light of his guilty plea, irrelevant.***

Goldsmith alleges he is actually innocent. Fed. writ pet. at 8. In the Fifth Circuit, actual innocence is not an independent basis for federal habeas relief. See *Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998); *Jacobs v. Scott*, 31 F.3d 1319, 1324 (5th Cir.1994). Accordingly, this claim must be dismissed. FED. R. CIV. PROC. 12(b)(6).

This Court should dismiss the substance of this claim as conclusory and meritless. Goldsmith complains "I know if I would not of [sic] listened to my lawyer I would have gotten a fraction of the time! I would have needed a different attorney! I am only innocent of 1st degree murder not the crime altogether, 2nd degree murder is justified!" Fed. writ pet. at 8. Goldsmith now regrets pleading guilty to first degree murder and feels second degree would be more appropriate. Fed. writ pet. at 8. His actual innocence claim is conclusory and presents nothing for review. Goldsmith does not enumerate any argument or use legal authority to justify his position. His assertions lack probative evidentiary value. *Ross*, 694 F.2d at 1011; *Green*, 744 F.2d at 1191; *Koch*,

17

907 F.2d at 530.

The trial court implicitly rejected the factual basis for Goldsmith's claim of actual innocence. Goldsmith plead guilty to first degree murder. A guilty plea goes beyond admission of having acted culpably; it is itself a conviction. *Diaz v. Martin*, 718 F.2d 1372, 1376 (5th Cir. 1983). After considering affidavits from both sides, the trial court found that his plea was entered knowingly, voluntarily, and with effective assistance of counsel. *Ex parte Goldsmith* at 77. The state court's implicit credibility choices and factual findings are entitled to a presumption of correctness on federal habeas corpus review. 28 U.S.C. § 2254(e)(1) (West 2004). Supreme Court interpretations of §2254(d) teach that the factual determinations made by state trial and appellate courts after a hearing are to be accorded a presumption of correctness and are entitled to a high measure of deference by reviewing federal courts. *Wainwright v. Witt* made clear that from appeal to habeas corpus, the standard of review changes from "great deference" to "a presumption of correctness." 469 U.S. 412, 429 (1985). The state court's decision to deny Goldsmith relief did not result in a decision that was contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Goldsmith is not entitled to relief.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Director respectfully requests that the court dismiss the instant action, with prejudice.

Respectfully submitted,
GREG ABBOTT
Attorney General of Texas

BARRY McBEE
First Assistant Attorney General

18

DON CLEMMER
Deputy Attorney General  for
Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation Division


_____
*Attorney-In-Charge                         GEORGETTE P. ODEN*
Assistant Attorney General
State Bar No. 24029752
Georgette.Oden@oag.state.tx.us
P. O. Box 12548, Capitol Station
Austin, Texas   78711
(512) 936-1600
Facsimile No. (512) 936-1280

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I, Georgette P. Oden, Assistant Attorney General of Texas, do hereby certify that a true and

correct copy of the above and foregoing **Respondent Dretke's Answer with Brief in Support** has

been placed  in the United States Mail, postage prepaid, on this the 2nd day of August, 2005,

addressed to:

Jeffery J. Goldsmith
TDCJ #1222846
Coffield Unit
Rt. 1 Box 150
Tennessee Colony, TX 75884


_____
GEORGETTE P. ODEN
Assistant Attorney General


19